UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MARIA VIRGINIA RIBEIRO DO VALLE MAGALHAES MARQUES** | § § | **CASE NO. 18-cv-4159** |
| **v.** | § § | **Jury Trial Demanded** |
| **UNITED AIRLINES, INC., UAL CORPORATION AND UNITED CONTINENTAL HOLDINGS, INC.** | § § § | **Hon. Robert W. Gettleman** |
| | | **Magistrate Judge M. David Weisman** |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff Maria Virginia Ribeiro do Valle Magalhaes Marques, by and through her attorney, Derek Merman of The Heard Law Firm., and for claims against United Airlines Inc. (hereinafter referred to as "United" or "Defendant"), alleges as follows:

### I. PARTIES

1. Plaintiff Maria Virginia Ribeiro do Valle Magalhaes Marques (hereinafter referred to as "Ms. Marques" or "Plaintiff") is a citizen and resident of Rio de Janeiro, Brazil.

2. Defendant United Airlines, Inc. has appeared and answered.

### II. JURISDICTION

3. This Court has subject matter jurisdiction over the lawsuit pursuant to 28 U.S.C. §1331 because the action arises under a collection of treaties of the United States, namely, the Convention for the Unification of Certain Rules for International Carriage by Air, commonly referred to as the "Montreal Convention," which has been ratified by Canada, the United States, Brazil and approximately 120 other countries. Specifically, subject matter jurisdiction exists because Plaintiff was a passenger and sustained bodily injuries during an accident that occurred while embarking on an international flight in the United States.

### III. VENUE

4. The Northern District of Illinois is a proper forum to bring this matter because the Northern District of Illinois is the district where Defendant maintains its principal place of business in the United States. Article 33 of the Montreal Convention provides that an action for damages may be brought in any one of five locations at the Plaintiff's direction: (1) where the carrier is domiciled; (2) where the carrier has its principal place of business; (3) the place of business through which the contract has been made; (4) the place of destination; or (5) where the passenger has her principal and permanent residence. Montreal Convention, Art. 33(1), (2). Plaintiff has chosen the carrier's principal place of business to bring her action because it is the most appropriate and convenient venue of the options available.

5. Moreover, the Northern District of Illinois is the proper venue for the action because the evidence and witnesses, including Defendant's employees and decision makers, the incident site, the instrumentalities at issue in the case and the bulk of Plaintiff's medical treatment and records reside in the United States and are subject to the jurisdiction of this Court.

### IV. FACTS OF THE CASE

6. In October 2017, Ms. Marques' son purchased a United Airline ticket for airline passage on Saturday, November 18, 2017 from Toronto, Canada to Rio de Janeiro, Brazil for Ms. Marques. Ms. Marques' son noted that Ms. Marques needed wheelchair assistance during the purchase of the ticket and the request was reflected on the reservation for the ticket. This trip included a layover and connection in Houston, Texas. The flight from Toronto, Canada to Houston, Texas was on United Airlines Flight 3583. The flight from Houston, Texas to Rio De Janeiro, Brazil was on United Airlines Flight 129. Because of the negligence of the Defendant, Ms. Marques never made it on United Airlines Flight 129.

7. Ms. Marques had been in Toronto, Canada visiting her grandchildren and was on her way back home to Brazil. Due to complications with Poliovirus as a child, Ms. Marques' right leg is weak, and she makes use of a wheelchair while embarking and disembarking airplanes. Plaintiff and her son requested wheelchair assistance from United and its employees and United provided wheelchair assistance to Ms. Marques at the airport in Toronto, Canada. United also provided the requested wheelchair assistance to Ms. Marques as she disembarked the airplane in Houston, Texas and brought her to her gate to await her flight home to Brazil. United employees assured Ms. Marques that they would return to assist her in boarding her connecting flight. However, no United employees would return to assist Ms. Marques, despite her and her son's explicit requests for wheelchair assistance throughout her journey from Toronto, Canada to Rio De Janeiro, Brazil.

8. Ms. Marques' layover in Houston, Texas was five hours long and throughout the layover no one from United came to check on Ms. Marques. As the time came for her to board her flight, no one came to assist Ms. Marques in embarking on the airplane, although Ms. Marques' son had specifically requested United's assistance for his mother and was assured assistance would be provided. This request had been made well in advance of travel and confirmed the day of travel; Ms. Marques has an imperfect mastery of the English language and she and her son wanted to be assured of assistance for her to board and deplane her flights.

9. Ms. Marques waited, in the seat where she had been left, for further direction from United regarding her wheelchair assistance. Almost everyone had boarded the flight and still no United employees had returned to assist Ms. Marques with boarding. Ms. Marques was left to approach the boarding area unassisted in order to make her flight. Ms. Marques handed her boarding pass to the attendant at the gate and entered the jet bridge; at this point, Ms. Marques was

3

in an area strictly regulated by Defendant and restricted to only airline passengers, staff and ground personnel. Ms. Marques, under the control of and at the direction of United employees, walked down the first half of the jet bridge with her hand against the wall to keep her balance; there was no handrail, a defect of which United, as the possessor of the jet bridge, was aware and responsible for. As Ms. Marques made it to the second half of the jet bridge, there was a handrail that she grabbed on to. However, the handrail was loose and shaking – another defective condition under the control of United. As Ms. Marques tried to make her way to the door of the airplane she tripped on a raised defect in the carpet of the jet bridge and fell on her left knee. Ms. Marques could not see the raised defect because the carpet of the jet bridge was aesthetically identical throughout the entire length of the jet bridge and raised defects were not distinctively marked. Ms. Marques' entire left leg immediately began to swell. Ms. Marques began screaming as she suffered excruciating pain. No one from United came to assist her; a female and male passenger came to Ms. Marques' aid and screamed for help.

      10.      One of United's employees eventually approached Ms. Marques and asked her if she could get up and move out of the way of the other passengers. When Ms. Marques said that she could not, United's employees did not move Ms. Marques, but allowed boarding to continue around her. Instead of rendering immediate aid, the United boarding crew set up barriers directing the remaining passengers around Ms. Marques as she writhed on the floor with a broken leg and severed artery. Ms. Marques waited helplessly on the floor of the jet bridge for nearly an hour before ambulance workers came to her aid. Ms. Marques' called her son, Frederico Marques, while she was suffering painfully on the floor of the jet bridge. Frederico listened helplessly as his mother screamed in pain on the floor of the jetway. Frederico immediately booked the first flight from Toronto, Canada to Houston, Texas to be by his mother's side.

11. Emergency medical personnel had to cut Ms. Marques' pants due to the swelling and they had to administer morphine for Ms. Marques' debilitating pain. Ms. Marques was then rushed to the emergency room at Memorial Hermann Northeast Hospital. The hospital found that Ms. Marques had suffered a severe break in her left leg that resulted in a severed artery. Due to the severity of her injuries and the need for immediate surgery, Ms. Marques had to be transferred to Memorial Herman Medical Center Hospital. A few hours after arriving at Memorial Hermann Medical Center Hospital, Ms. Marques underwent an arterial bypass surgery – a vein from her right leg was transferred to her left leg to replace the severed artery. She also underwent two surgeries to repair her badly broken left leg, her "good leg," prior to the incident. Those surgeries involved seven incisions, two over a foot long, and fixation of two separate plates to bind her broken left leg.

12. Ms. Marques stayed in Memorial Herman Medical Center Hospital for sixteen days. Her sons were by her bedside the entire time. Upon release, the hospital recommended that Ms. Marques receive extensive physical therapy for her leg and were guarded concerning her ability to regain full mobility. Ms. Marques finally returned to Brazil on December 5, 2017. Ms. Marques' sons tried to make a claim with United through their Customer Service Claim Form. However, United never responded to the claim. Literally adding insult to injury, United never honored, reimbursed, or refunded Ms. Marques' original flight ticket to Brazil, causing Ms. Marques to pay over $4,500 to obtain tickets for flights back home to Brazil.

V. **CAUSES OF ACTION**

13. Ms. Marques was injured through unexpected and abnormal occurrences external to her, described below, during the course of embarking on an international flight. This case is therefore governed by the Convention for the Unification of Certain Rules for International

Carriage by Air, commonly referred to as the "Montreal Convention." Pursuant to the Montreal Convention, Defendant is strictly liable for Ms. Marques' injuries and damages up to 113,100 SDR (at the time of this filing, approximately $169,300 U.S. dollars). Defendant is liable for Plaintiff's damages above this amount unless Defendant proves, by clear and convincing evidence, that the accident that caused Ms. Marques' injuries was due solely to Plaintiff's negligence or the negligence of a third party, which is expressly denied by Plaintiff. Plaintiff hereby pleads and requests the rights and protections afforded to her under the Montreal Convention.

### A. Failure to Provide Requested Wheelchair Assistance

14. Plaintiff and her son explicitly and specifically requested wheelchair assistance for Ms. Marques from United; this request was made in advance of her travel because Ms. Marques does not speak English fluently. United encourages passengers in need of wheelchair assistance to request the assistance in advance of travel. United provided her wheelchair assistance in Toronto to board her flight to Houston. United provided the requested wheelchair assistance when Ms. Marques debarked the plane in Houston and brought her to the gate for her United flight to Brazil. There is no question that the Marques' had requested the wheelchair assistance. There is no question that United knew, well in advance of travel, that Ms. Marques required wheelchair assistance. United employees in Houston knew on the day of travel that Ms. Marques had requested and needed wheelchair assistance, as they had provided it to her on the inbound flight.

15. United Airlines has routine practice, to which it conformed in the present case, to fail to provide passengers with requested wheelchair assistance, which United is legally obligated to provide. Defendant was fined two million dollars by the U.S. Department of Transportation ("U.S. DOT") in 2016 for violating rules for servicing disabled travelers, particularly wheelchair

6

bound passengers.[1] The U.S. DOT investigated Defendant's compliance with federal regulations because there was a significant increase in the number of disability-related complaints received by Defendant's customers. *Id.* The U.S. DOT found that Defendant failed to provide disabled passengers with prompt and adequate assistance in boarding and deplaning aircraft and moving through several airports, including Houston International Airport, Chicago O'Hare International Airport, Denver International Airport, Newark International Airport, and Dulles International Airport. *Id.* United's routine inability to provide wheelchair services in the past and in the present case demonstrates an endemic problem with its ability to provide service to disabled passengers. This failure by United to provide assistance after it was requested was a producing and proximate cause of Ms. Marques' injuries and resulting damages and a link in the chain of accident-producing events attributable to United.

### B.     Defective and Dangerous Jet Bridge

16.    Defendant had exclusive control of the area in the jet bridge at the time of the incident. The jet bridge, past the door at which the United attendant scanned Ms. Marques' boarding pass, is a strictly controlled and a highly restricted space. United was at all relevant times the possessor and user of the jet bridge and had a duty to ensure that it was in a safe condition for Ms. Marques. Ms. Marques had no choice but to use the jet bridge to board the plane and was proceeding to the plane at the direction of and under the control of United and its employees.

17.    Defendant and Defendant's employees negligently operated, controlled, and maintained the jet bridge in violation of industry standards, its own policies and procedures and in a manner therefore unexpected by Ms. Marques. The jet bridge was defective and poorly

---

[1]  Gloria Gonzalez, *United Fined $2 Million After Complaints by Disabled Travelers Skyrocket*, Business Insurance (Jan. 12, 2016), http://www.businessinsurance.com/article/00010101/NEWS08/160119942/United-fined-$2-million-after-complaints-by-disabled-travelers-skyrocket.

maintained as evidenced by its absent, inadequate and dysfunctional handrails. The purpose of handrails is to provide stability and support and specifically to prevent falls such as the one Ms. Marques suffered. The absence of handrails and the defective handrail meant that Ms. Marques had no way to support herself and the movement of the defective handrail caused and contributed to her fall. The defective handrail and United's negligence in discovering, maintaining, warning of and/or remedying the condition was a producing and proximate cause of the incident and a link in the chain of unexpected, accident-producing events attributable to United.

18. Further, Defendant's employees negligently operated, inspected, controlled, warned of and/or maintained the jet bridge as evidenced by the defective and dangerous irregularities, lumps and defects in the carpet of the jet bridge. As Ms. Marques proceeded down the jet bridge, without the support of the handrail or the requested wheelchair assistance, she unexpectedly encountered a defect in the carpet that was not open or obvious to her. She tripped over this raised portion of the carpet, which was a producing and proximate cause of her injuries. Defendant's acts and omissions related to inspecting, using and/or operating maintaining the jet bridge, singularly and in combination, rendered the jet bridge dangerously defective and were the producing and proximate cause of Ms. Marques' injuries and damages and a link in the chain of unexpected, accident-producing events attributable to United.

### C. United's Acts and Omissions Constitute an "Accident" under the Montreal Convention

19. The conduct of Defendant's employees was unusual, unexpected, and external to Ms. Marques, thereby constituting an "Accident" under Article 17 of the Montreal Convention. As a direct, legal and proximate result of Defendant's unusual and unexpected conduct, all of which was external to Plaintiff, Plaintiff suffered severe and permanent injuries.

20. At all times relevant hereto, Defendant, by way of its representatives, employees and/or crew, acted in a manner which constituted an unusual, abnormal and unexpected happening or event, which was external to Plaintiff, and individually and/or collectively, constituted an "Accident" within the meaning of Article 17 of the Montreal Convention, thus making Defendant responsible therefore, all of which were part of the chain of events leading to Plaintiff's serious injuries.

21. Defendant's affirmative acts and omissions in failing to provide a wheelchair for Ms. Marques to embark the plane in Houston were events that concern the operation of the aircraft and specifically involved Defendant's employees. United is under an affirmative duty, prescribed by Federal law (e.g. The Air Carrier Access Act, The Americans with Disabilities Act, Department of Justice Regulations, and Federal Regulations for the Nondiscrimination on the Basis of Disability in Air Travel, including but not limited to 14 C.F.R. §§ 382.15; 382.91; 382.93 & 382.95), to assist disabled passengers and those who request wheelchair assistance. 14 C.F.R. §382.51 Once assistance is requested, United "**must** promptly provide or ensure the provision of assistance requested by or on behalf of passengers with a disability." 14 C.F.R. 382.95(a) (emphasis added). United is responsible to discharge this duty and may not avoid liability for the failure to provide wheelchair assistance by blaming its contractors. 14 C.F.R. § 382.15. United's failure to comply with Federal regulations was unexpected by Ms. Marques.

22. United and its employees were the owners, users and/or possessors of the jet bridge on which Ms. Marques was injured and had absolute dominion over its condition, maintenance, and use. Defendant was responsible for the safety of its passengers, and Ms. Marques specifically, as they boarded the plane. Defendant was in a far superior position than Ms. Marques to detect and eliminate the hazards associated with the jet bridge. Ms. Marques had neither the duty nor the opportunity to render the jet bridge safe for her to board. Ms. Marques rightfully expected United to provide a safe route to board the plane; United's failure to provide a safe jet bridge was a

departure from its policies and procedures and industry standards such that the defective jet bridge was unexpected by Ms. Marques. The producing and proximate causes of Ms. Marques' injuries and damages were events external to Ms. Marques, related to the operation of the aircraft and were in the direct control of the Defendant. United's failure to provide a jet bridge fee of dangerous defects was a link in the chain of accident-producing events attributable to United.

23. Finally, Canada, the United States of America, and Brazil are all signatories to the Montreal Convention with date of entries into force before the date of the accident in the instant case.

## VI. DAMAGES

24. As a direct and proximate result of Defendant's above-noted acts and omissions, Ms. Marques suffered extensive, life threatening, and permanent personal injuries. Ms. Marques' leg was broken so badly that it severed her artery. Her injuries were so severe that she could not be treated in the first hospital to which she was taken, as it did not have the capabilities to save her life and limb. In order to save her life and her leg, the exceptional doctors of Memorial Hermann Hospital in the Houston Medical Center performed two vascular surgeries on the day of the incident – one to remove a vein from Ms. Marques' right leg and another to use that vein to bypass the severed femoral artery in her left leg and stabilize the multiple fractures in her left leg. Then, ten days later, orthopedic surgeons performed two internal fixations of plates and screws in her left leg. In all, Ms. Marques suffered through seven surgical interventions and required more than 100 stiches to suture over three feet of surgical incisions on her legs.

25. As a direct and proximate result of the life-threatening injuries alleged above, Ms. Marques sought and received medical care from doctors, nurses, physical therapists and hospitals. Ms. Marques incurred significant bills for reasonable and necessary medical treatment related to

the injuries she received in this incident and Ms. Marques expects to incur additional medical expenses in the future.

26.     As a direct and proximate result of the acts, and omissions noted above, Ms. Marques has been impaired in her activities at home and during her recreational activities. She has also suffered excruciating mental and physical pain. For almost an hour, Ms. Marques laid on the floor of the jet way in tremendous pain while the United employees boarded passengers around her. United would not even give her a blanket to cover up as she lay in shock on the floor. Her injuries are permanent in nature that constitute non-economic damages that she is entitled to in an amount according to proof.

27.     Plaintiff sustained multiple leg fractures that required internal fixation of plates, a severed artery, wounds, severe disfigurement, pain, suffering, mental anguish and other injuries as a result of an accident occurring while she was a passenger embarking on Defendant's airplane, as those terms are understood pursuant to the Montreal Convention. As authorized in the Montreal Convention, Plaintiff brings suit for the recovery of:

- a. expenses for medical and attendant care in the past and that Plaintiff will continue to incur in the future;
- b. severe pain and suffering in the past and that Plaintiff will continue to suffer in the future;
- c. severe disability and loss of capacity to enjoy life in the past and that Plaintiff will continue to suffer in the future;
- d. lost ability to perform household services and Plaintiff will not regain this ability in the future;
- e. expenses for travel related to United's refusal to honor the ticket she was unable to use because of her injury;
- f. court costs that she will continue to incur, including witness and expert witness fees, throughout the pendency of this action;
- g. pre and post-judgment interest on all damages; and
- h. such other and further relief which this Court may deem appropriate.

11

## VII. DEMAND FOR JURY TRIAL

28. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Maria Virginia Ribeiro do Valle Magalhaes Marques has demanded a jury trial in this matter and tendered the applicable fee.

Dated this 21st day of September, 2018.

Respectfully submitted,

/s/ Peter J. Flowers
Peter J. Flowers
Michael W. Lenert
**MEYERS & FLOWERS, LLC**
3 N. 2nd Street, Suite 300
St. Charles, Illinois 60174
630.232.6333 Voice / 630.845.8982 Facsimile
PJF@Meyers-Flowers.Com
MWL@Meyers-Flowers.Com
**ATTORNEYS FOR PLAINTIFF**

– and –

/s/ Derek Merman
Derek Merman, Attorney in Charge
Fed Bar No.: 578113
**HEARD LAW FIRM**
2925 Richmond, Suite 1550
Houston, Texas 77098
713.665.1100 Voice / 713.751.9100 Facsimile
derek@heardlawfirm.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      I hereby certify that on October 12, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to received services in this matter.

      /s/ Peter J. Flowers
      Peter J. Flowers

**ATTORNEYS FOR DEFENDANT**
Telly Andrews     tandrews@kmalawfirm.com
Robert A. Braun     rbraun@kmalawfirm.com
Matthew J. Obiala     MObiala@kmalawfirm.com
**KAPLAN, MASSAMILLO & ANDREWS, LLC**
200 W. Madison St., 16th Floor
Chicago, Illinois 60606
312.345.3000 Voice
312.345.3119 Facsimile